UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID E. MURRAY,                          )
                                          )
              Plaintiff,                  )
v.                                        )          Case No. 2:15-CV-00484-DBH
                                          )
WALMART STORES, INC., *et al.*            )
                                          )
              Defendants                  )

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Walmart Stores, Inc. and Walmart Stores East, L.P. ("Walmart") move for

summary judgment on the entirety of Plaintiff David Murray's ("Murray") claims in this matter.

[REDACTED]

---
[1] A market is a district of approximately 8–10 Walmart stores.

[REDACTED]

Accordingly, Walmart moves for summary judgment on the entirety of Murray's claims, including: (1) his claims of unlawful retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Maine Human Rights Act, 5 M.R.S. §§ 4551–4634, and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831–840; (2) his claim of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*; (3) his claim of disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973; (4) his claim pursuant to Maine's wage-payment statute, 26 M.R.S. § 626.

## FACTUAL BACKGROUND

The material facts of this matter are set forth in full in Walmart's Statement of Material Facts, which is incorporated herein by reference in its entirety. The following is a summary.

### 1. Murray's Employment With Walmart

Murray was employed by Defendant Walmart from October 1993 until January 2017. Defendants' Statement of Material Facts ("SMF") ¶ 1. Murray is a Caucasian, heterosexual male. *Id.* ¶ 2. From February 2006 through January 18, 2015, Murray worked for Walmart as a Market Manager. *Id.* ¶ 3. The Market Manager position is a highly compensated, high-level management position responsible for the performance of large, complex retail stores. *Id.* ¶ 4. ■



**3. Murray's Claims Of Retaliation And Discrimination**









[REDACTED]

Walmart thus had genuine, legitimate, and non-discriminatory reasons for Murray's termination. Murray has no colorable or other evidence that the stated bases of his termination were pretextual in any way, because they were not. Where, as here, Murray can muster no evidence apart from his own unsupported speculation that he was retaliated or discriminated against because of alleged protected conduct or a protected characteristic, and where the alleged actions of which Murray complains do not rise to the level of an adverse employment action or a legally actionable hostile work environment, the Court should grant Walmart's Motion.

## LEGAL STANDARD

"'The role of summary judgment is to pierce the pleadings' and probe the proof to ascertain whether a need for trial exists." *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018). "Summary Judgment is 'a means of avoiding full-dress trials in unwinnable

cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.'" *Murray v. Kindred Nursing Centers West LLC*, 789 F.3d 20, 24–25 (1st Cir. 2015). "Consistent with this praxis, the nonmovant can forestall summary judgment by 'present[ing] *definite, competent evidence*' demonstrating the existence of a genuine dispute about a material fact." *Id.* (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The moving party may prevail by demonstrating "an absence of evidence to support the nonmoving party's case." *Phair v. New Page Corp.*, 708 F. Supp. 2d 57, 61 (D. Me. 2010). Although the Court "view[s] the evidence in the light most favorable to the nonmovant, as to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001). "This evidence cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). The Court is not "required to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made by a party." *Bonefont-Igaravidez v. Int'l Shipping Corp.*, 659 F.3d 120, 123 (1st Cir. 2011). Judged by these standards, Murray's claims fail as a matter of law.

## ARGUMENT

I.    **Murray's Retaliation Claim Fails As A Matter Of Law**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ Taking the facts in the light

most favorable to Murray, his claim fails because (1) he did not experience a discriminatory

adverse employment action; (2) he did not experience objectively offensive behavior that was

severe or pervasive; and (3) there is no causal connection between his claimed protected activity

and the alleged behavior he found harassing.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to

discriminate against an employee because the employee opposed an unlawful practice or

participated in an investigation or proceeding. 42 U.S.C. § 2000e–3(a). Title VII Retaliation

claims are judged using the *McDonnell Douglas* burden-shifting framework. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973); *see also Theriault*, 890 F.3d at 350

(stating that the *McDonnell Douglas* framework applies at summary judgment to employment

retaliation claims). Under this framework, Murray has the initial burden of demonstrating a

"prima facie case," which requires "the production of admissible evidence, which, if

uncontradicted, would justify a legal conclusion of [retaliation]." *Theriault*, 890 F.3d at 350. If

the plaintiff meets his burden, "the burden of production then shifts to the defendant to identify a

legitimate reason for the adverse employment action." *Id.* "Once [the defendant's] minimal

burden of production is satisfied, the burden reverts to the plaintiff to show that the proffered

reason was not the real reason for the adverse employment action but, rather, was a pretext for

retaliation." *Id.* Generally, to prove a prima facie case of retaliation, the plaintiff must show that

(i) he engaged in protected conduct; (ii) he suffered an adverse employment action; and (iii) there was a causal connection between the protected conduct and the adverse action. *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009).[4]  The failure to produce sufficient evidence of a causal connection between alleged protected conduct and the adverse action warrants summary judgment on a retaliation claim. *See Theriault*, 890 F.3d at 349 (noting that a plaintiff must make a sufficient evidentiary showing of causation to survive summary judgment).

### A. Murray Cannot Demonstrate A Causal Connection Between Any Adverse Employment Action And The Alleged Protected Conduct

Here, Murray has no evidence of and cannot demonstrate a causal connection between any protected conduct and any adverse employment action, as he must to survive summary judgment.  With respect to causation in a retaliation claim, Murray must establish that his alleged protected activity was a "but-for" cause of the adverse employment action, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  In *Nassar*, the Supreme Court "rejected the less stringent standard that the plaintiff must show only that retaliation was a 'motivating' factor" of the adverse employment action for

---

[4] The same standards apply to Murray's state-law claims pursuant to the Maine Human Rights Act ("MHRA") and the Whistleblowers' Protection Act ("WPA").  *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 n.1 (1st Cir. 2007) ("Maine courts apply the MHRA in accordance with federal anti-discrimination law.  Accordingly, the magistrate judge considered Forrest's MHRA claim and Title VII claim concurrently; we will do the same.") (internal citation omitted); *Ramsdell v. Huhtamaki, Inc.*, 992 F. Supp. 2d 1, 14 n.19 (D. Me. 2014) ("To the extent Plaintiff states her retaliation claim under state and federal law, the same analysis applies and the Court considers the state and federal claims concurrently without laying out a separate analysis of Plaintiff's MHRA claim."); *Bodman v. Maine, Dept. of Health and Human Servs.*, 787 F. Supp. 2d 89, 99 n.14 (D. Me. 2011) (analyzing state-law claims, including MHRA and WPA claim, consistently with federal standards).  While Maine recently abandoned the *McDonnell Douglas* burden-shifting framework for WPA claims, the First Circuit has recognized that "the Maine-specific retaliation paradigm obligates the plaintiff to adduce precisely the same quantum of proof that [he] would have had to adduce to defeat summary judgment under the *McDonnell Douglas* framework . . . [t]he proof is simply arranged in a different way."  *Theriault*, 890 F.3d at 351 (*citing Brady v. Cumberland Cty.*, 2015 ME 143, ¶¶ 38–39, 126 A.3d 1145).

purposes of a retaliation claim. *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014).[5] Thus, to survive a motion for summary judgment, Murray must present sufficient colorable evidence of a direct causative link between the alleged protected activity and the adverse employment action. *Theriault*, 890 F.3d at 349 ("To demonstrate a causal link sufficient to defeat a summary judgment motion, [the plaintiff] must make a sufficient evidentiary showing . . . .'"); *Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006) ("Given the absence of evidence establishing a causal connection between the protected conduct and discharge, the district court correctly granted [the employer] summary judgment on the retaliation claim."); *Ponte*, 741 F.3d at 322 ("A reasonable factfinder could not find there was a causal nexus between Ponte's vague statements to Chestnut and the termination of her employment in May 2011.").

For an action to constitute an "adverse employment action," the "alleged retaliatory action must be material, producing a significant, not trivial, harm." *Carmona-Rivera v. Commonwealth of P.R.*, 464 F.3d 14, 19 (1st Cir. 2006); *see also Canales v. Potter*, 614 F. Supp. 2d 213, 218 (D.P.R. 2009) ("Whether an action is sufficient to support a claim of retaliation is judged objectively and depends on the particular circumstances of the case."). As the First Circuit has noted, "the inquiry must be cast in objective terms. Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996). "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an

---

[5] Even judged under the less-stringent "motivating factor" standard, Murray's claims remain legally deficient.

accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Id.*

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

### 1. The 2014 Performance Evaluation

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████  The evaluation is broken down into a number of subcategories, and employees are rated in each subcategory.[6]  SMF ¶ 99.  ██████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

█████  *LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 691–92 (8th Cir. 2001) (noting that an overall score of "consistently meets expectations" is "not inherently 'negative,'" and therefore

---

[6] From highest to lowest, the ratings are: (1) "Role Model"; (2) "Exceeds Expectations"; (3) "Solid Performer"; (4) "Development Needed"; and (5) "Below Expectations."  SMF ¶ 102.

"cannot constitute an adverse employment action").[7] █████████████████████████

███████████████████████████████████████████ *Cf. Carmona-Rivera*, 464 F.3d at

20 (noting that an adverse employment action must produce a "significant, not trivial, harm").

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

[7] *See also Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (holding that "counseling statements" that reprimanded employee but stopped short of imposing discipline were not an adverse employment action, and noting that if "we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit…").

**2. Murray's October 2016 Termination**

███████████████████████████████████████████

Murray has no colorable evidence of any causative link between his termination and alleged protected conduct. *Cf. Theriault*, 890 F.3d at 350. To the extent Murray attempts to rely upon temporal proximity with some alleged protected conduct, the First Circuit has noted that "[c]hronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation.'" *Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc.*, 425 F.3d 67, 85–86 (1st Cir. 2005) (*quoting Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003)). For temporal proximity to provide any evidence of retaliation, the protected conduct and the adverse employment must be "very close" in time. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) (holding that a one-month interval between protected conduct and the adverse employment action is sufficient); *cf. Ramirez*, 425 F.3d at 85–86 (holding that two months is insufficient); *King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir. 1997) (five-month period insufficient). ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ Accordingly, Murray cannot point to any legitimate protected activity that occurred in close proximity to his termination, and Murray cannot otherwise draw any rational connection between his termination and some protected activity.

i. **Walmart Terminated Murray For Legitimate, Non-Discriminatory Reasons**

Even if Murray could establish a *prima facie* case of retaliation, which he cannot, Murray's claim still fails because Walmart had legitimate, non-discriminatory reasons for the termination, and because Murray cannot demonstrate that Walmart's non-discriminatory reasons for his termination were pretextual. *Theriault*, 890 F.3d at 350. ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



*Fiumara v. President  & Fellows of Harvard Coll.*, 327 Fed. Appx. 212, 213 (1st Cir. 2009) (employer not required to accommodate request for indefinite leave); *Watkins v. J & S Oil*, 164 F.3d 55, 61–62 (1st Cir. 1998).

---

[8] Numerous courts have held that an employee is not excused from the disciplinary consequence of recording colleagues because he does so to document alleged discrimination, retaliation, or other misconduct.  *See, e.g., Argyrolpoulos v. City of Alton*, 539 F.3d 724, 733–34 (7th Cir. 2008) (noting that "Title VII . . . does not grant the aggrieved employee a license to engage in dubious self-help tactics or workplace espionage in order to gather evidence of discrimination," and  that "inappropriate workplace activities are not legitimized by an earlier-filed complaint of discrimination"); *Jones v. St. Jude Medical S.C., Inc.*, 823 F. Supp. 2d 699, 743 (S.D. Ohio 2011) ("[E]mployees are not excused from the consequences of violating a company policy even if the employee breaks the rule to preserve evidence in litigation.").



The First Circuit is clear that "[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality of employers' nondiscriminatory business decisions." *Rodriguez-Cuervo v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 22 (1st Cir. 1999). ████

████████████████████████████████████████████████████████████████

████████ Murray's employment was thus terminated for legitimate, non-discriminatory reasons, which justifies summary judgment on his claims.

### ii. Murray Cannot Demonstrate That Walmart's Stated Rationale For His Termination Was Pretextual

Once the employer demonstrates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff who must prove that any articulated explanations for alleged adverse actions were pretextual and made to disguise retaliatory animus. *McDonnell Douglas,* 411 U.S. at 802-804. "The pretext inquiry focuses on the employer, and whether the employer believed that its stated reason for the termination was credible." *Ponte*,

741 F.3d at 323. A plaintiff may not simply "'impugn the veracity' of the employer's proffered reason." *Id.* Instead, "a plaintiff must proffer specific facts that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover up the employer's true motive." *Id.*; *see also Murray*, 789 F.3d at 27 (noting that "[c]asting aspersions is not enough" to satisfy an employee's burden of showing pretext); *Jordan v. Summars*, 205 F.3d 337, 343 (7th Cir. 2000) ("In order to show pretext, [the plaintiff] must demonstrate that [the defendant's] proffered reason is a lie or completely lacks a factual basis.").

Here, Murray has adduced no evidence of pretext because none exists, and Murray cannot "proffer specific facts" demonstrating that the stated reasons for his termination were a "sham." *Ponte*, 741 F.3d at 323. ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ These facts further warrant summary judgment on Murray's claims.

### B. Murray Cannot Demonstrate That He Was Subject To A Retaliatory Hostile Work Environment

Murray also cannot demonstrate that he was subject to any retaliatory hostile work environment. "To establish a hostile work environment, a plaintiff must show that [his] workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of … [his] employment and create an abusive working environment." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 43 (1st Cir. 2011). This inquiry has both objective and subjective components, as the plaintiff must

satisfy the Court that the alleged acts of retaliation "rise to the level of severity or pervasiveness that a reasonable employee would find to have materially altered the conditions of her employment…" *Id.* at 45. "Case law is clear that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment….'" *Colon-Fontanez*, 660 F.3d at 44 (internal quotation marks omitted). As the First Circuit has stated, "if protected activity leads only to commonplace indignities typical of the workplace (such as tepid jokes, teasing, or aloofness)," a retaliation claim will not lie because "an employee reasonably can expect to encounter such tribulations even if she eschews any involvement in protected activity." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). The Court's "role is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Colon-Fontanez*, 660 F.3d at 44 (internal quotation marks omitted); *see also Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (noting that "Title VII . . . does not set forth a general civility code for the American workplace," and "personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable.").

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████







[REDACTED] *Cf. Torres-Medina v. Dept. of the Army*, No. 15-2085, 2016 WL 4179885, at *5 (D.P.R. Aug. 4, 2016) ("An internal investigation into 'suspected wrongdoing by an employee' is not an adverse employment action in the discrimination context.") (citing cases). [REDACTED]

[REDACTED] In short, the summary judgment record is

wholly devoid of evidence supporting Murray's claim of an illegal hostile work environment. Accordingly, the Court should grant summary judgment in Walmart's favor on Murray's claims.

## II. Murray Has Failed To Adduce Admissible Evidence Of Illegal Discrimination Against Him Based On His Age Or Disability.

Murray also claims that Walmart discriminated against Murray because of his age and because of his alleged disabilities. Complaint ¶ 60. Neither claim should survive. For all the reasons set forth above, Murray's discrimination claims fail because he has not demonstrated any adverse employment action against him in the first instance, other than his termination which was based on legitimate, non-discriminatory, and non-pretextual grounds. Murray's discrimination claims also fail because Murray has not demonstrated that he was subjected to a hostile work environment based on his age or alleged disability.

### A. Murray Was Not Discriminated Against Because Of His Age

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ *See Colon-Fontanez*, 660 F.3d at 44 (noting that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'").

[REDACTED]

As stated above, Murray's evidence does not support a claim that he was discriminated against because of his age. *Adamson v. Walgreens Co.,* 750 F.3d 73, 78 (1st Cir. 2014). The Court should grant summary judgment to Walmart on Murray's age discrimination claim.

**B.    Murray Was Not Discriminated Against Because Of Any Disability**

Murray's claim that he was discriminated against due to an alleged disability also fails. In order to prove disability discrimination based on a hostile work environment, Murray must demonstrate that: "(1) he was disabled within the meaning of the [Americans with Disabilities]

[REDACTED]

Act; (2) he was subject to unwelcome harassment because of the disability; (3) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (4) the employer knew or should have known about the harassment but failed to take prompt remedial action." *Arroyo-Ruiz v. Triple-S Mgmt. Group*, 206 F. Supp. 3d 701, 717 (D.P.R. 2016); *see also Colon-Fontanez*, 660 F.3d at 43 ("[A] plaintiff must show that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of … [her] employment and create an abusive working environment.").

███████ *Burlington Northern*, 548 U.S. at 68; *see also Gómez-Pérez v. Potter*, 452 Fed. Appx. 3, 6–9 (1st Cir. 2011) (coworker's use of profanity when speaking to the plaintiff, telling her she did not belong and should go back to where she belonged, and threat to use his position as union representative to make her life difficult did not amount to adverse employment actions). ██████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████ Accordingly, the Court

should grant summary judgment on Murray's discrimination claims.

### C.  Walmart Did Not Fail To Reasonably Accommodate Murray

████████████████████████████████████████████████

████████ "In order to prove 'reasonable accommodation,' a plaintiff needs to show not only

that the proposed accommodation would enable her to perform the essential functions of [his]

job, but also that, at least on the face of things, it is feasible for the employer under the

circumstances." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). ████████

██████████████████████████████████████████████

███████████████████████████

The First Circuit has recognized that while "a leave of absence or a leave extension can

constitute a reasonable accommodation under the ADA 'in some circumstances' . . . '[w]hether

[a] leave request is reasonable turns on the facts of the case." *Echevarria v. AstraZeneca*

*Pharmaceutical LP*, 856 F.3d 119, 128 (1st Cir. 2017). "[W]here a plaintiff fails to show facial

reasonableness, summary judgment for the defendant is appropriate." *Id.* Importantly, it is well-

established that an employer is not required to accommodate a request for indefinite leave.

*Fiumara*, 327 Fed. Appx. at 213 ("[I]ndefinite leave is not a reasonable accommodation under

the ADA."); *Watkins*, 164 F.3d at 62 ("J & S was not required, for ADA purposes, to provide

accommodation to Watkins for what amounted to an 'indefinite leave.'").

████████████████████████████████████████████████

██████████████████████████████████████████



For all of these reasons, any argument by Murray that Walmart failed to offer a reasonable accommodation is without merit.

## III.  Murray's Allegations Are Time-Barred

Many of Murray's allegations were not brought within the 300-day period provided by law.  An aggrieved party must file his or her complaint "with the [Maine Human Rights Commission] not more than 300 days after the alleged act of unlawful discrimination." 5 M.R.S.A. § 4611; *see Gordan v. Cummings*, 2000 ME 68, ¶¶ 10–11, 756 A.2d 942. Because Maine is a "deferral state" that has its own anti-discrimination laws and agency, the time limit for Murray's federal claims is the same as for Murray's state-law claims.  42 U.S.C. § 2000e-5(e); *Lakshman v. Univ. of Maine Sys.*, 328 F. Supp. 2d  92, 101 (D. Me. 2004).

Here, Murray filed his Charge of Discrimination ("Charge") with the Maine Human Rights Commission and the Equal Employment Opportunity Commission on or about June 2, 2014.  SMF ¶ 63.  Thus, only those allegations that pertain to events or incidents allegedly occurring after August 6, 2013 were timely asserted.  *Id*.  Murray attempts to rely on numerous

events or incidents that occurred well outside the 300-day period. In fact, many of Murray's allegations date back to 2010. *E.g., id.* ¶¶ 49, 65, 139. ██████████████████████

███████████████████████████████████████████████████████████████

██████████████████████ Accordingly, Murray may not rely on such events in order to support his claims. *See Ayala v. Shinseki*, 780 F.3d 52, 59 (1st Cir. 2015).

To the extent Murray may seek to rely upon the continuing violation doctrine, that reliance is misplaced. "For the continuing violation doctrine to apply, a plaintiff must prove that (1) at least one discriminatory act occurred within the limitations period, (2) the alleged timely discriminatory act has a substantial relationship to the alleged untimely discriminatory act, and (3) the otherwise time-barred events did not trigger his 'awareness and duty' to assert his rights." *Windross v. Barton Protective Serv., Inc.*, 586 F.3d 98, 103 (1st Cir. 2009). Here, Murray does not meet these requirements.

First, there were no legitimate "discriminatory acts" that occurred during the 300-days limitations period, for all the reasons set forth above. Second, Murray has not demonstrated any relationship between any events occurring prior to August 6, 2013, and those occurring after. As another federal court has noted, a "[p]laintiff's bald and general assertions that [a defendant] continually harassed her are insufficient to avoid brevis disposition as to this claim" of retaliatory harassment. *Levine-Diaz v. Humana Health Care*, 990 F. Supp. 2d 133, 153 (D.P.R. 2014).

Third, Murray cannot show that the earlier violations did not trigger his "awareness and duty" to assert his rights. *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 612 (1st Cir. 2000) ("[W]here a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely,

were taking place."). ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ This is a further basis

on which the Court should refuse to consider events occurring prior to August 6, 2013 as

evidence of discrimination or retaliation.

## IV. Murray's Claim Pursuant To The Wage Payment Statute Fails As A Matter Of Law

Murray claims that Walmart did not pay him in accordance with 26 M.R.S.A. § 626,

Maine's wage-payment statute ("Section 626"). ████████████████████ As it existed at

the time of Murray's termination, Section 626 provided that an "employee leaving employment

must be paid in full within a reasonable time *after demand . . . .*" 26 M.R.S.A. § 626 (1995)

(emphasis added).[12] ████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[12] Effective November 1, 2017, Section 626 was amended to remove the requirement that the employee make a demand. 26 M.R.S.A. § 626 (2017).



Because the summary judgment record demonstrates that there has been no violation of 26 M.R.S.A. § 626, the Court should grant summary judgment to Walmart on this claim.[13]

## VI.    Murray Is Not Entitled To Punitive Damages

Even if the Court determines that one or more of Murray's claims survive, which it should not, the Court should still conclude that Murray is not entitled to punitive damages under the circumstances of this case.  To recover punitive damages under federal or state law, Murray would have to show that Walmart "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  *Davis v. Emery Worldwide Corp.*, 267 F. Supp. 2d 109, 128 (D. Me. 2003) (citing 42 U.S.C. § 1981a(b)(1) and 5 M.R.S.A. § 4613(2)(B)(8)(c)).  "[A]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII."  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999).

Based upon the summary judgment record in this case, Murray is not entitled to punitive damages. Among other things, Walmart has comprehensive and strict policies against discrimination, harassment, and retaliation, including a Discrimination and Harassment Prevention Policy that forbids all forms of harassment, discrimination, and retaliation in the workplace. SMF ¶ 239; *cf. Harris v. L & L Wings, Inc.*, 132 F.3d 978, 983 (4th Cir. 1997) (stating that, "[i]n some cases, the existence of a written policy instituted in good faith has operated as a total bar to employer liability for punitive damages," and concluding that "the institution of a written sexual harassment policy goes a long way towards dispelling any claim about the employer's 'reckless' or 'malicious' state of mind") (quoted approvingly in *Kolstad*, 527 U.S. at 544). Walmart provides associates with formal and meaningful processes to report or complain of inappropriate conduct in the workplace. The Discrimination and Harassment Prevention Policy includes a phone number through which associates may report any inappropriate conduct to the Walmart Global Ethics Office, and may do so confidentially or anonymously if they desire. *Id*. ¶ 239. Walmart has a formal Open Door Communications Policy and promulgates management guidelines to assist supervisors in responding to Open Door Communications requests. *Id.* ¶ 240. Walmart also has a policy regarding accommodations in employment, which again provides a toll-free number to anonymously report concerns. *Id.* ¶ 241.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



Murray has not adduced any evidence that Walmart engaged in any discriminatory or retaliatory practice with malice or with reckless indifference to his rights. *Davis Emery Worldwide Corp.*, 267 F. Supp. 2d at 128. For purposes of punitive damages, Murray may not seek to hold Walmart vicariously liable for any actions of its managerial agents in light of Walmart's substantial, good-faith efforts to comply with Title VII.[15] *Kolstad*, 527 U.S. at 545. Accordingly, the Court should grant summary judgment on Murray's punitive damages claim.

## CONCLUSION

For all the foregoing reasons, the Court should grant summary judgment to Defendants on the entirety of Murray's claims in this matter.

Dated:  April 29, 2019

*/s/ Ronald W. Schneider, Jr.*
Ronald W. Schneider, Jr.
Eben M. Albert
BERNSTEIN SHUR
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5029
(207) 774-1200
rschneider@bernsteinshur.com
ealbert@bernsteinshur.com



Attorneys for Defendants Walmart Stores, Inc. and Walmart Stores East, L.P.

**CERTIFICATE OF SERVICE**

I hereby certify that on the date stated above, I served a copy of the foregoing document

via U.S. First Class Mail and e-mail to the following:

David E. Murray
16 Trail Road
Casco, ME 04015
demurr11@gmail.com

Dated:  April 29, 2019                    */s/ Ronald W. Schneider, Jr.*
Ronald W. Schneider, Jr.
Eben M. Albert
BERNSTEIN SHUR
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5029
(207)774-1200 (t)
(207) 774-1127 (f)
ealbert@bernsteinshur.com

Attorney for Defendants